## CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK *v.* CHICAGO TITLE & TRUST COMPANY, TRUSTEE IN BANKRUPTCY OF PRINCE.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 741.  Argued January 6, 1913.—Decided June 10, 1913.

To constitute a preferential transfer within the meaning of the Bankruptcy Act of 1898 there must be a parting with the bankrupts' property for the benefit of the creditor and a consequent diminution of the bankrupt's estate. *Newport Bank* v. *Herkimer Bank,* 225 U. S. 178.

In determining whether there has been a preferential payment, the

nature of the property transferred is not as essential as the facts showing exactly what transpired between the parties.

The arrangement involved in this action, made between a bank and a grain broker, in regard to transferring certificates of deposit held as collateral for dealings in grain on the Chicago Board of Trade, do not appear to have in any way diminished the estate and *held* not to have amounted to an illegal preference.

The purpose of § 68a of the Bankruptcy Act is to prevent debtors of the bankrupt from acquiring claims against him for use by way of set-off and reduction of their indebtedness by way of set-off; but the transaction in this case does not come under § 68a. *Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502, distinguished.

THE facts, which involve the construction of certain provisions of the Bankruptcy Act of 1898, relating to preferential payments are stated in the opinion.

*Mr. Horace Kent Tenney,* with whom *Mr. Roger Sherman* was on the brief, for appellant.

*Mr. Edwin Terwilliger, Jr.,* with whom *Mr. William J. Pringle* was on the brief, for appellee:

As to preferences. The transfer of the bankrupt's "open trades" to Anderson was a transfer of property for the benefit of the bank. *Nat. Bank of Newport* v. *Nat. Herkimer Bank,* 225 U. S. 178; Bank Act, ch. 1, § 1.

A preferential transfer includes every mode of disposing of property for the benefit of a creditor, and circuity of arrangement will not avail to save it. *Nat. Bank* v. *Nat. Herkimer Co. Bank, supra; Western Tie Co.* v. *Brown,* 196 U. S. 502; *Hackney* v. *Hargraves,* 99 N. W. Rep. 675.

The endorsement and delivery of the margin certificate to the bank was a transfer of the amounts of the margin securities held by the bank as a Board of Trade depository, to the bank as a creditor, and was a payment. *Traders' Nat. Bank* v. *Campbell,* 14 Wall. 87; *Ridge Ave. Bank* v. *Studheim,* 145 Fed. Rep. 798; *Lowell* v. *Trust Co.,* 158

Fed. Rep. 781; *Irish* v. *Citizens' Trust Co.*, 163 Fed. Rep. 880.

The deposit of more than enough to pay the specified checks under the special deposit arrangement was a preferential transfer. *N. Y. County Bank* v. *Massey*, 192 U. S. 138; *Western Tie Co.* v. *Brown*, 196 U. S. 502.

As to the right of set-off. There was no right of set-off as to the margin securities, because the same were deposited, as security, with the bank in its capacity as a Board of Trade depository, and not according to the custom of banks. They were special or specific deposits, and not general deposits, and created a trust relation and not a relation of debtor and creditor. Bolles on Banking, § 3; Morse on Banking, § 185; *Woodhouse* v. *Crandall*, 197 Illinois, 104; *Montague* v. *Pacific Bank*, 81 Fed. Rep. 602; *Moreland* v. *Brown*, 86 Fed. Rep. 257; *Peck* v. *Ellicott*, 30 Kansas, 156, 1 Pac. Rep. 499; *People* v. *Bank*, 96 N. Y. 92; *Anderson* v. *Pacific Bank*, 112 California, 598; *Libby* v. *Hopkins*, 104 U. S. 303; *Collins* v. *State*, 33 Florida, 439.

A bank has no lien or right of set-off against special deposits or money deposited for a specific purpose, as for collateral security or for the payment of a particular debt. 3 Am. & Eng. Ency., 2d Ed., 822, 837; 5 Cyc. 552; Morse on Banking, § 325; *Reynes* v. *Dumont*, 130 U. S. 390; *Wagner* v. *Citizens' Trust Co.*, 122 S. W. Rep. 245; *Smith* v. *Sanborn State Bank*, 126 N. W. Rep. 779; *Dolph* v. *Cross*, 133 N. W. Rep. 667; *In re Davis*, 119 Fed. Rep. 950; *Germania Sav. Bk.* v. *Loeb*, 188 Fed. Rep. 285; *Western Tie Co.* v. *Brown*, 196 U. S. 502; *Scott* v. *Armstrong*, 146 U. S. 499; *Gray* v. *Rollo*, 18 Wall. 632; *Munger* v. *Albany City Bank*, 85 N. Y. 589; *Rawleigh* v. *Rawleigh*, 35 Illinois, 512.

There was no right of set-off as to the $575.79, because it was not treated by the parties as a general deposit, but was made "under special circumstances" amounting to a

special deposit. *N. Y. County Bank* v. *Massey*, 192 U. S. 138; *Western Tie Co.* v. *Brown*, 196 U. S. 502; *Germania Sav. Bank* v. *Loeb*, 188 Fed. Rep. 285.

The bank and bankrupt were in collusion to turn all the bankrupt's available assets over for the benefit of the bank. The alleged right of set-off was acquired with a view to such use. *Western Tie Co.* v. *Brown*, 196 U. S. 502; *National Security Bank* v. *Butler*, 129 U. S. 223; *Yardly* v. *Philler*, 167 U. S. 344, 359.

MR. JUSTICE DAY delivered the opinion of the court.

This is a controversy arising in a bankruptcy proceeding and involves questions of the right to certain property, as between the appellant, the Continental & Commercial Trust & Savings Bank, and the Chicago Title & Trust Company, as trustee in bankruptcy of Earl H. Prince, Bankrupt. Two items are involved, first, the sum of $4,250, the amount of certain margin certificates issued by the predecessor of the appellant Bank to the bankrupt Prince; and second, a balance of $575.79 remaining in Prince's checking account with the bank of the predecessor of the appellant, therein deposited by the bankrupt. The trustee brought the suit to recover the amount of the margin certificates and the bank balance as having been preferentially transferred within the terms of the Bankruptcy Act. The District Court held the trustee entitled to recover, and this decree was affirmed by the Circuit Court of Appeals, 199 Fed. Rep. 704, and the case comes here.

There is no controversy as to the facts. A petition in bankruptcy was filed against Prince, February 15, 1905. He had been for several years a member of the Board of Trade of Chicago, buying and selling on the Board and subject to its rules. The Federal Trust & Savings Bank, the predecessor of the appellant, was engaged in the gen-

eral banking business in the City of Chicago, and Prince did his banking business at that bank, and had a general deposit and checking account therein. By the rules of the Board of Trade purchasers and sellers might require of the other party to the trade a deposit of ten per cent. of the contract price of the property bought or sold, and further security from time to time as the margin might require. Certain banks, of which the Federal Trust & Savings Bank was one, were authorized to issue margin certificates, which were in the following form:

"Federal Trust and Savings Bank
                              Chicago No.......
"Deposited by E. H. Prince,                    $........
.................................................... Dollars.
As security on a contract or contracts between the depositor and ...................., which amount is payable on the return of this certificate, or the duplicate of the same (one of which being paid, the other shall become void), duly endorsed by both of the above named parties, or on the order of the President of the Board of Trade of the City of Chicago, endorsed on either *of* the original or duplicate hereof, as provided by the rules of the Board of Trade under which the above named deposit has been made.
         ' Original
         Not negotiable or transferable

                    ...............................
                              Cashier."

Margin certificates on various days from September 15, 1904, to February 9, 1905, in the form above set forth had been issued to Prince, to procure which he had drawn his check against his checking account with the Bank or deposited with it the requisite sum of money. Each of the said certificates evidenced a liability of the Bank to Prince for the amount stated in the certificate, unless, because of the default by Prince on the contract for which

the certificate was held by the other party as security, it was paid to such other party. The record of certificates was kept in the margin register of the Bank.

On the fourteenth of February, 1905, the Vice President of the Bank and Prince had a conference concerning the financial troubles of Prince, and one W. P. Anderson, of W. P. Anderson & Company, was called to the Bank. A conference was had as to the best way of closing out Prince's open trades, with the result that Anderson agreed to act in the premises, and on the same day, February 14, and the day following, Prince transferred all his open trades in accordance with the rules of the Board to Anderson, for his company, and the latter agreed to carry out Prince's contracts, and proceeded to do so. Anderson & Company on February 15, 1905, substituted its own securities for Prince's trades, and thereby recovered the certificates deposited by Prince, which were turned over to the Federal Trust & Savings Bank. Prince was at that time indebted to the Bank in the sum of about $37,000, and the Bank, upon the return of the certificates from Anderson & Company, applied the money secured by the certificates to Prince's indebtedness to the Bank. The Master found: ·

"That taking the said open trades so transferred as a whole, the condition of the market at the time of the transfer was such that the aggregate sum of the amounts due thereon to Earl H. Prince from members of the Board of Trade, if he had then settled the trades, would have been greater than the aggregate sums of the amount then due thereon from Prince to others of said members of the Board; that among the open trades so transferred and settled were trades with the said members of the Board who held securities or margin certificates furnished by the said Prince.

"That on February 15, 1905, the market was constantly changing. If the trades with the members holding Prince's

margin certificates had been closed at the opening of the Board on that day by the members holding them, there would have been due from them to Prince in the aggregate a balance of approximately one-third of the amount of the certificates after deducting therefrom the amount that would have been due to them from Prince. If the trades had been closed later in the day, the balance coming to Prince would have been considerably less. However, if Prince had carried out all of these contracts, the profits which he would have made upon some of them would have been about balanced by the losses which he would have sustained on others."

Furthermore:

"That the plan adopted at the conference between Mr. Prince, Mr. Anderson and Mr. Castle was doubtless the best plan that could have been adopted to avoid serious loss to Prince, or to his creditors. The condition of the market was such at that time that had Anderson & Company not taken charge of Prince's trades and carried them through a panic might have ensued on the Board, and the market so fluctuated that the amount of. all of the margin certificates, and quite likely a considerable more, would have been lost to Prince and his creditors."

The facts with respect to the bank balance of $575.79 are: On February 10, 1905, the Bank called the loans of Prince, and, such loans not being paid, the Bank applied to them the sum of $3,095 then on deposit in Prince's checking account, leaving the sum of $3.25 in that account. On the same day the Bank agreed with Prince that, if he would thereafter make deposits for such purpose, it would pay certain salary and payroll checks of Prince and checks issued to the Board of Trade Clearing House. Checks were paid on divers days between the fourth and fourteenth of February, 1905, to the amount of $2,506.46, and Prince deposited with the Bank between the tenth and fourteenth of February a total of $3,079,

all such items being entered upon the books of the Bank as of February 14, 1905. The amount deposited exceeded the amount checked out by $572.54, and this amount, with the $3.25 remaining to the credit of Prince, as above set forth, left a balance of $575.79, which the Bank on February 14 applied to Prince's general indebtedness to it.

The Bank had reasonable cause to believe that Prince was insolvent from and after February 10, and during the transactions from that date to and including February 15.

The trustee relies upon certain sections of the Bankruptcy Act, which he claims make the transaction with Prince by which the Bank acquired the certificates and the bank deposit a preferential one, and therefore void within the terms of the act. The act provides:

"Sec. 60a. A person shall be deemed to have given a preference, if, being insolvent, he has : . . made a transfer of any of his property, and the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"Sec. 60b. If a bankrupt shall have given a preference, and the person receiving it . . . shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. . . ."

On the other hand the Bank claims the right to set off the amount of the certificates and bank balance against the indebtedness of Prince to it by reason of § 68a of the Bankruptcy Act:

"Sec. 68a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

This case must be dealt with in the light of certain principles, established by decisions of this court, in determining the applicable provisions of the Bankruptcy Act. To constitute a preferential transfer within the meaning of the Bankruptcy Act there must be a parting with the bankrupt's property for the benefit of the creditor and a consequent diminution of the bankrupt's estate. *New York County National Bank* v. *Massey*, 192 U. S. 138, 147; *Newport Bank* v. *Herkimer Bank*, 225 U. S. 178, 184.

Much discussion appears in the briefs of counsel as to whether the deposits evidenced by the margin certificates were general deposits, creating between the Bank and the depositor the relation of debtor and creditor, or were special deposits which the Bank had no authority to mingle with its general funds. We do not deem it necessary to enter into a discussion of this question, with a view to determining the technical question as to the nature of the relation thus created between the Bank and the depositor. In cases of this character it is essential to learn just what has taken place between the parties, with a view to ascertaining whether a preferential transfer of property to a creditor has resulted.

The statement of facts already made shows that these certificates were payable to Prince, unless they were required to be paid to the party holding them as security for Prince's dealings upon the Board of Trade. It is further evident from the facts stated that without the coöperation of Anderson & Company, who took the place of Prince upon the Board of Trade, substituted their securities for those of Prince and carried out his obligations, the certificates would have had no value to the estate. By the arrangement made, Anderson & Company took hold of the situation, and, carrying out the deals upon which Prince was bound, cleared the certificates of any obligation to others, and they thereby be-

came payable to Prince. What was done did not in fact diminish the estate of Prince otherwise available to the creditors in the bankruptcy administration, for the traders holding them would have had the benefit of the deposits under the terms of the certificates and the rules of the Board of Trade. It therefore appears that this essential element of a preferential transfer within the meaning of the Bankruptcy Act, diminution of the bankrupt estate, is wanting. The fact that what was done worked to the benefit of the creditor and in a sense gave him a preference is not enough, unless the estate of the bankrupt was thereby diminished. *New York County National Bank* v. *Massey, supra.*

It is contended, however, that the set-off cannot be allowed because of the provisions of § 68b of the Bankruptcy Act, which provides:

"Section 68b. A set-off or counter-claim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate; or (2) was purchased by or was transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent, or had committed an act of bankruptcy."

It is the main purpose of this statute, as its terms show, to prevent debtors of the bankrupt from acquiring claims against the bankrupt for use by way of set-off and reduction of their indebtedness to the estate. There is no question of the solvency of Prince when he deposited the money to secure the certificates, and what was done was not the acquisition of a claim against Prince with a view to setting it off against the Bank's indebtedness on the certificates, but was the satisfaction, without diminution of the estate of the bankrupt, of possible claims of others who, in the event of Prince's default, would have been entitled to the deposits represented by the certificates.

We do not think such transaction comes within the language or reason of § 68b.

It is said, however, that the case of *Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502, holds to the contrary. In that case, it appears, one Harrison, a bankrupt, was a debtor of the Tie Company, which presented a claim against the bankrupt estate of $24,358; that for some years prior to the bankruptcy it had been engaged with Harrison in removing timber from certain lands of the Tie Company and converting it into ties. Harrison had conducted stores in the vicinity and gave laborers groceries and other supplies. The Tie Company received a payroll on which the name of each laborer was entered, together with the amount he earned and the value of the supplies he had received from Harrison, and it deducted from the earnings of the laborer the value of the supplies, a check for which was sent to Harrison, and a check for the balance was sent to the laborer. Four months before the filing of the petition in bankruptcy Harrison owed the Tie Company $20,000 and more. Within that time the Company refused to pay Harrison and retained and credited on its claim against him $2,210.73, which was due him for supplies he had furnished the laborers subsequent to November 30, 1902. Harrison was then insolvent, as the Tie Company knew, and it was found that it intended by retaining the amounts to secure to itself a preference over other creditors, but Harrison had no such intention. This court found that the application of the amounts advanced to the laborers did not amount to a voidable preference, since the agreement mentioned brought about no preference whatever, and, upon the question as to whether the Tie Company was entitled to set off the deductions from the payroll due Harrison, held that from the facts found it appeared that the Tie Company was obligated to remit to Harrison the amount of such deductions irrespective of the condition of the

account between itself and Harrison, and that therefore the Company stood to Harrison in the relation of trustee and the case was not one of mutual credits and debts within the provisions of § 68a. And furthermore that to allow the set-off would be in violation of § 68b, because, whether a trust relation existed or not, the result would be the same, for the Company's knowledge of Harrison's insolvency when it acquired the claims of the latter against the laborers with a view to using them by way of set-off was to enable it thus to obtain an advantage over the other creditors, which it could not lawfully do.

In that case there was a specific finding that the Tie Company had appropriated money which it really held in trust for Harrison and that it had acquired the claims of Harrison against the laborers with a view to the prohibited set-off. In the case at bar there was no finding that the Bank held the money in trust for a specific purpose so as to deny it the right of set-off or that it acquired any claim against the bankrupt with a view to making it a set-off. It is not shown that when Prince made the deposits for the margin certificates he was insolvent, and the deposits created no preference. What was done here, as we have said, consisted in procuring a broker to take up the trades of Prince so that the certificates became clear of the rights of any third persons and to do this without any diminution of the bankrupt estate. We think such a case as this is distinguishable from the case of *Western Tie & Timber Company* v. *Brown, supra*, and does not come within the obvious reason and purposes of the prohibitions against acquiring set-offs contained in § 68b.

As to the $575.79, we think the right to set off this deposit is established by the principles laid down in *New York County National Bank* v. *Massey, supra*. Here there was a deposit subject to be checked out by the bankrupt for specific purposes. The money was not placed

in the bank with a view to giving it a benefit, except indirectly, because of the deposit. It was subject to Prince's check, and all of it might have been checked out for the purposes intended.

> *The decrees of the Circuit Court of Appeals and of the District Court are reversed, and the case remanded to the District Court for further proceedings in conformity with this opinion.*