## In re CROSS.

### Appeal of CITY BANK TRUST CO.

(Circuit Court of Appeals, Second Circuit. April 13, 1921.)

No. 175.

1. **Banks and banking ☞134(1)—Bank can set off deposit against notes due from depositor.**

   Deposits received by a bank in the regular course of business, which are subject to withdrawals by check, can, in the absence of collusion or fraud, be set off by the bank against the amount due to the bank from the bankrupt depositor on notes discounted by the bank, though the depositor was insolvent when the notes became due, and such insolvency is known to the bank.

2. **Bankruptcy ☞326—Trustee must set off deposit in bank against note due to bank.**

   Where the parties have not voluntarily made, before bankruptcy, the set-off of the amount of the bank deposits against the amount due from the bankrupt depositor, the trustee in bankruptcy must make such set-off.

3. **Banks and banking ☞134(2)—Accepting check and note from bank held not to defeat bank's right of set-off.**

   The fact that a bank, on the day the petition in bankruptcy was filed, accepted from the bankrupt a check for the amount of his deposits, to be applied on his note to the bank, and took a new note for the balance still due, does not defeat the bank's right to set off the amount of the deposit against the amount due it from the bankrupt.

4. **Banks and banking ☞134(4)—Agreement substituting new accounts for those paid held not to defeat right to set-off.**

   Where accounts receivable had been assigned as collateral security for a note given to a bank, an agreement that the amounts paid on the accounts assigned should be deposited to the debtor's account, to be used in the transaction of the business, and that new accounts should be assigned in place of those paid, does not defeat the bank's right to set off the debtor's deposit against the amount due on the notes after the bankruptcy of the debtor.

5. **Banks and banking ☞134(7)—Evidence held not to show deposit was trust fund for creditors.**

   Evidence that it was understood that the amounts paid on accounts assigned to a bank to secure a note were to be deposited to the debtor's credit, and were to be used for the transaction of his business, but that there was no express agreement limiting the purpose for which checks could be drawn on such deposit, does not show that the deposit was a trust fund for the creditors of the debtor, against which the bank could not set off the amount of the note.

6. **Bankruptcy ☞154—Bank held entitled to set off surplus from sale of security for other indebtedness.**

   A bank can set off against a demand note of the bankrupt, secured by assignment of accounts receivable, the surplus received by the sale of warehouse receipts for flour assigned to it as a collateral security for another note, given for money advanced by the bank to enable the bank to purchase the flour covered by the receipts, at a time when the bank had no knowledge that the maker of the notes was insolvent.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition to Revise and Appeal from Order of the District Court of the United States for the Northern District of New York.

In the matter of John M. Cross, bankrupt. From a decree awarding judgment against the City Bank of Syracuse, now the City Bank

Trust Company, for the total sums of money on deposit in the name of the bankrupt (265 Fed. 769), the Bank appeals. Decree reversed.

Chapman, Newell & Crane and Harry Newell, all of Syracuse, N. Y., for appellant.

Costello, Burden, Cooney & Fearon and David F. Costello, all of Syracuse, N. Y., for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. John M. Cross was adjudicated a bankrupt on the 14th of October, 1916, and a trustee of his estate was appointed. He filed a petition in the District Court, praying for an order or decree directing the City Bank of Syracuse to pay over to the trustee certain moneys alleged to have been received and retained by the bank under circumstances which he claimed amounted to an unlawful preference. An answer was filed by the bank and the issues were referred to a special master. He reported that the trustee was entitled to recover from the bank the sum of $2,755.24, being the amount on deposit to the credit of the bankrupt on the books of the bank on the 25th of October, 1916; also the sum of $622.61, being the amount of surplus arising from the sale of 205 barrels of flour pledged by the bankrupt to the bank as collateral security for the payment of a note of $1,261.39, made on the 26th of September, 1916. The master's conclusions were approved by the District Judge, and it is from a decree entered thereon that this appeal is taken.

On April 15, 1916, the bankrupt, with one partner, was engaged in the wholesale grocery business in the city of Syracuse, and borrowed money from the City Bank of Syracuse to the extent of $18,000, giving their promissory note therefor, payable on demand, and as collateral security therefor gave an assignment of all their accounts receivable. By agreement between the copartnership and the bank it was agreed that the copartnership would collect the assigned accounts and deposit the proceeds in the bank to the credit of the partnership, and be privileged to draw against the same by check, but for purposes of the business only. Daily assignments to the bank of all new accounts receivable were made in place of those collected and deposited, and thus the borrower kept the security for the loan unimpaired. In April, 1916, the firm was dissolved, and the bankrupt continued in business alone and in his own name. The agreement referred to between the bank and the copartnership continued. Between the period of April, 1916, when the bankrupt continued in business alone, and October 25, 1916, daily assignments to the bank of the new accounts receivable were made, and old accounts were collected, and moneys were paid from the bank account in the regular course of business. The demand note of $18,000 had not been paid. The bank held assigned accounts to an amount aggregating $24,000, and on the day of his adjudication in bankruptcy, there was on deposit $2,755.24. The District Judge upheld the validity of the original agreement between the copartnership and the bank, and it was directed that $13,555.63 collected from the accounts receivable of the bankrupt, which were assigned as collateral for the payment of said note, was the property of the bank.

But as to the $2,755.24 standing to the credit of Cross on the books of the bank on the date of the filing of the petition in bankruptcy, which moneys appear to have been deposited in the usual course of business, it was decreed belonged to the trustee. By a special finding of the master, which was approved by the court, it was found there was no purpose or intent of preferring the bank in the transaction.

One week before the filing of the petition, the bank, after an examination of the bankrupt's books, gave notice to the debtors of the bankrupt that it was the owner of the accounts and that the same should be paid to the bank and not to Cross. On the day the petition in bankruptcy was filed, the bank credited up on the bankrupt's $18,000 demand note the amount of the balance of $2,755.24, and charged the same to Cross' account. Later on the same day the bankrupt gave a check for the amount and delivered it to the bank, together with a new demand note for the difference between this sum and the amount of the demand note, to wit, $15,226.76. This was done for the purpose of obtaining the benefit of the bank's right of a set-off of mutual debts and credits under section 68 of the Bankruptcy Act. It was held below that, even though such right to a set-off existed between the bank and the bankrupt, and it was conceded that such set-off was permissible under the Bankruptcy Act, still, because of what took place by giving the new note, and because of the agreement existing between the bank and the bankrupt, no such right of set-off existed as against the general creditors of the bankrupt or against the trustee.

Another transaction is the subject of review on this appeal. The bankrupt borrowed from the bank $1,261.31 on a demand note on September 25, 1916, and pledged as collateral security a warehouse receipt for 205 barrels of flour. The proceeds of this loan were remitted to a milling company in Minneapolis, which shipped the flour to the bankrupt with a sight draft attached to the bill of lading, and sent it to the City Bank of Syracuse for collection. The bank sold the flour on October 16, 1916, and after paying the note had a surplus of $621.61, which it applied to the bankrupt's demand note of $15,226.76. It contends that it was entitled so to do by virtue of section 68 of the Bankruptcy Act. The court below held against this contention, and said that such sum must be paid to the trustee. Section 68 of the Bankruptcy Act (Comp. St. § 9652) provides as follows:

"a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate; or (2) was purchased by or transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent, or had committed an act of bankruptcy."

[1, 2] The cases are in accord in holding that where a bank receives deposits in the regular course of business, which are subject to withdrawals by check, and there is no collusion or fraud, and where notes have been discounted by the depositor at the bank, it has the right, when notes are due, to set off the amount due to the bank on the notes

against the amount due from it on the deposit account. This right exists, even though the depositor is insolvent when the notes become due, and such insolvency is known to the bank. Continental Trust Co. v. Chicago Title Co., 229 U. S. 435, 33 Sup. Ct. 829, 57 L. Ed. 1268; N. Y. County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. And where the set-off exists, and the parties themselves have not voluntarily made such set-off or adjustment before bankruptcy, the trustee must do so. Studley v. Boylston Natl. Bank, 229 U. S. 523, 33 Sup. Ct. 806, 57 L. Ed. 1313.

[3, 4] We find nothing in the agreement between the parties which militates against the view that the relation of debtor and creditor existed between the bankrupt and the appellant. The fact that a check was drawn and payment made, and a demand note given for the difference, does not alter the case. That transaction, occurring on the day the petition was filed, was invalid. The money against which the check was drawn was at all times with the bank, and remained with the bank, and there has been no changing of the relations between the depositor and the bank. If the transaction by which the check was drawn and new note given for the difference was invalid, as a preference, it left the parties in the position they were in prior to such giving of the check and of the note. The purpose of the agreement, by which the accounts were assigned as collateral, was to keep the bank secured as a creditor during all the times money was owing from the bankrupt. The daily substitution of new accounts for old accounts paid and deposited in the bank did not change the relationship, even though the bank lost title or its lien upon the deposit, which it had by virtue of the assignment of accounts. This did not and could not deprive it of the banker's right of set-off.

[5] There were no limitations placed upon the bankrupt's right to check against this account. The bankrupt testified as follows:

"Q. Was there any limitation agreed upon or understood between you and the bank upon your checking power on that account? Were you confined in other words to checks in payment for business indebtedness or were you at liberty to give any checks you pleased? A. There was no definition made at the time. We assumed it was for business checks, or checks to pay bills of business requirements.

"Q. That is, if you wanted to meet a pay roll connected with the business? A. We always issued a check for the pay roll; our salary was agreed upon, and we had our check for our salary, the same as the other help.

"Q. As a business expenditure? A. Yes.

"Q. There was nothing said, however, imposing any other limitation upon the use of that account? A. No.

"Q. What, in fact, was your practice did you draw for other purposes? A. For business purposes only."

There is no evidence which would permit a construction that the deposit was a special deposit, or a trust fund for the benefit of creditors. The relationship thus created, made in good faith and in the ordinary course of business, is no obstacle to the bank's right to insist upon its lien and right of set-off as provided in the bankruptcy statute. In Continental Trust Co. v. Chicago Title Co., 229 U. S. 435, 33 Sup. Ct. 829, 57 L. Ed. 1268, the bank agreed with its depositor, after knowledge of his insolvency, that if he would make deposits for such pur-

poses, it would pay the salaries of clerks, and checks were drawn and paid on various days. The deposits exceeded the withdrawals by check in the sum of $575.79, and the bank claimed the right of set-off of such balance against the depositor's due note. The court, sustaining the claim of the bank, said:

"As to the $575.79, we think the right to set off this deposit is established by the principles laid down in New York County National Bank v. Massey, supra. Here there was a deposit subject to be checked out by the bankrupt for specific purposes. The money was not placed in the bank with a view to giving it a benefit, except indirectly, because of the deposit. It was subject to Prince's check, and all of it might have been checked out for the purposes intended."

We think the same principle has application to the facts disclosed by this record.

[6] When on October 25, 1916, the bank set off against the amount owed the sum of $661.61, the surplus received from the sale of the flour, it had no reasonable grounds or cause to be charged with the belief that it was obtaining security for its antecedent indebtedness from an insolvent creditor. While the bank had from time to time examined the books of the bankrupt for the purpose of obtaining a list of the outstanding accounts, there is nothing to show that, at the time the bank availed itself of this undoubted right, it had knowledge of insolvency. The bankrupt continued to do business, and no evidence was offered indicating that the bank should have made inquiry as to Cross' insolvency. He was not declared insolvent until the 25th of October, 1916, and it was the bank that then found him to be insolvent. The loan for the flour transaction was made in good faith, and was not taken as a preference for a pre-existing loan. The principle of set-off of mutual debts and credits therefore applied. Under the terms of the note given, the right so to do is expressly conferred upon the bank.

The decree is reversed.