### In re BEISEKER & MARTIN.

(District Court, D. Montana.    October 25, 1921.)

No. 2303.

1. **Bankruptcy ☞68—Occupation at time of alleged act of bankruptcy governs.**

   In determining whether respondents are subject to involuntary bankruptcy, their occupation at the time they committed the act of bankruptcy counted on governs.

2. **Bankruptcy ☞91(1)—Petitioning creditors have burden of proving that alleged bankrupts are subject to involuntary proceedings.**

   The burden is on creditors petitioning for involuntary bankruptcy to show that the respondents are among those who can be adjudged involuntary bankrupts.

3. **Bankruptcy ☞68—Facts held to show principal business of respondents was farming.**

   Where respondents were engaged in leasing and farming large tracts of land, one of them devoted his entire time to managing the farm, and the other, though he had been manager of a bank, had devoted most of his time to handling the business of the farming operations, and, since the closing of the bank some time prior to the alleged act of bankruptcy, had devoted his time exclusively thereto, their principal occupation at the time of the act of bankruptcy was tilling the soil, so that they were not subject to be adjudged involuntary bankrupts.

4. **Bankruptcy ☞58, 68—Equitable transfer of farm leases held not to subject farming partners to involuntary proceedings.**

   Even if the leases to the farms which the respondents had been tilling had been transferred in equity to a corporation organized by them, so that they were no longer farmers, they could not on that account be adjudged involuntary bankrupts because of a mortgage of the property amounting to a preference, since, if they were not farmers, they were only wage-earners, who are not subject to involuntary proceedings, and, if the property was not theirs, a mortgage of it did not affect their creditors.

In Bankruptcy. Involuntary proceedings against Beiseker & Martin, alleged involuntary bankrupts. Proceedings dismissed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Wheeler & Baldwin, of Butte, Mont., for creditors.

Norris, Hurd & Rhoades, of Great Falls, Mont., for alleged bankrupts.

BOURQUIN, District Judge. [1-3] In these involuntary proceedings in bankruptcy, there is but one issue, viz.: Were defendants not engaged chiefly in farming or tillage of the soil when they committed the act of bankruptcy counted upon? That is the vital time (In re Folkstad [D. C.] 199 Fed. 363; Harris v. Tapp [D. C.] 235 Fed. 918), and the burden is upon petitioners to establish that respondents are of those subject to be adjudged involuntary bankrupts.

The evidence is that in 1916 respondents entered into partnership for the purpose of leasing and farming some thousands of acres of lands. At that time Martin was a farmer, and Beiseker cashier and manager of a small bank, of which he owned $1,000 or 5 per cent., of the capital stock, and from which he had a salary of $225 per month. They equipped the lands with all necessary and suitable machinery, and that and every year thereafter cultivated to various grains from 2,500 to 5,000 acres. Martin lived upon the lands and managed them, and Beiseker lived some 40 miles distant in the town of the bank, continued its cashier and manager until it closed, but visited the lands two or three times a week during the crop seasons, and exercised management and control over the lands and Martin. Beiseker financed the enterprise, and bought and sold for it. Obviously expenses were heavy and risks great.

Although not clear, it would seem there were failures of crops and accumulation of debts, and in 1920 Beiseker's financing assumed an altitudinal aspect. Through his bank they floated $52,000 of notes, secured by 1,400 sheep, and $200,000 of bonds of a corporation by them then organized, and apparently falsely represented to own the leases, equipment, and farm operations aforesaid. This equipment on January 11, 1921, was by respondents mortgaged to the son-in-law of Beiseker's brother, who was one of the organizers of said corporation, which as an alleged preference is the act of bankruptcy counted on herein. December 14, 1920, the bank closed, and thereafter Beiseker had no occupation, but in connection with the farming operations aforesaid, the headquarters of which, before maintained by him in the bank, thereafter are maintained in the same town in the office of a land company for which he performs some service.

During the fall of 1920 and winter following, Beiseker continued his usual services to the farm operations, including procuring and preparing seed for some 2,500 acres of grain sowed in the spring of 1921. He testified his salary from the bank was his support, but the farming operations were his chief activities, absorbed all his money and most of his time and attention, and were the basis of all his hopes; and in the main this is obvious. The case is within the circumstances that determine that men are engaged chiefly in farming or tillage of the soil (see In Re Brown, 253 Fed. 357, 165 C. C. A. 139), and accordingly such determination is made herein.

[4] Petitioners make some contention that in equity the corporation should be assumed to be the owners of the leases and equipment, and

hence that on January 11, 1921, when the act of bankruptcy was committed, respondents were at most mere wage-earners, and not engaged chiefly in farming. Be that as it may, however, it helps not petitioners' case. Wage-earners cannot be adjudged involuntary bankrupts, and if the equipment was then the corporation's, respondents' mortgage of it did not diminish their estate available to creditors—was not a preference and act of bankruptcy. See Trust Co. v. Title & Trust Co., 229 U. S. 444, 33 Sup. Ct. 829, 57 L. Ed. 1268.

The proceedings are dismissed.