**In the Matter of COLUMBUS MALLE-ABLE, INC., Alleged Bankrupt, Appellee.**

No. 71–1529.

United States Court of Appeals, Sixth Circuit.

April 25, 1972.

Stewart R. Jaffy, Columbus, Ohio, for appellants Local, and others; Clayman, Jaffy & Taylor, Columbus, Ohio, on brief.

Robert W. Werth, Columbus, Ohio, for appellee Columbus Malleable; Vorys, Sater, Seymour & Pease, Richard G. Ison, Columbus, Ohio, on brief.

Before WEICK, McCREE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The appellants filed in the court below an involuntary petition to have Columbus Malleable, Inc. adjudged an involuntary bankrupt. The petition charged that the alleged bankrupt had committed the first act of bankruptcy (fraudulent

transfer) and the second act of bankruptcy (a preferential transfer).[1]

After conducting a full evidentiary hearing the Referee found that the petitioning creditors had failed to carry the burden of proving the requisite elements of either of the two alleged acts of bankruptcy. They then filed a petition for review with the district court challenging the findings of the Referee and his order of dismissal. The District Court adopted and confirmed the findings, conclusions and order of the Referee and accordingly dismissed the petition for review. On appeal to this Court the petitioning creditors challenge the findings and conclusions of the District Court and insist that the proof introduced at the hearing before the Referee was sufficient to establish either one or both of the acts of bankruptcy.

We conclude after a consideration of the record that the petitioning creditors established the commission of the second act of bankruptcy (a preferential transfer) and accordingly we do not reach the questions raised as to the first act of bankruptcy alleged in the petition.

In the spring of 1969, Columbus Malleable found itself in financial straits. In order to meet operating expenses, a transaction was arranged whereby Northern Indiana Corporation, engaged in a real estate business, on May 12, 1969, transferred $50,000.00 to the bank account of Columbus Malleable. Northern Indiana, in return, subsequently received the proceeds from the sale of. $50,999.93 worth of castings which had constituted a part of Columbus Malleable's inventory. The President of Co-

lumbus Malleable, testifying at the hearing before the Referee, stated that he represented his company in the transaction and that Northern Indiana was represented by one Leland Boren (the owner of 50% of Northern Indiana's stock) who, in turn, was a member of the Board of Directors and Executive Committee of Columbus Malleable.[2]

The position of the alleged bankrupt in the lower court and on appeal is that this transaction constituted an ordinary purchase and sale of inventory, although there was no formal bill of sale. Its insistence is that a "letter of sale" and the attached invoice demonstrate that the transaction was a sale of the castings and not a credit arrangement. In any event, after the May 12th deposit date two shipments of castings were made directly to Northern Indiana. The remainder of the $50,999.93 worth of castings was shipped to regular customers of Columbus Malleable who (with one exception) were instructed on the invoices to make payments to Northern Indiana.

Both the Referee and the District Court concluded that this transaction constituted a loan by Northern Indiana to Columbus Malleable and not a sale. We find ourselves in agreement with this conclusion.

It appears from the evidence that National Acceptance Company, a third corporation, which was not made a party to the action, held a secured interest in the inventory and accounts receivable of Columbus Malleable, but the amount of its obligation was not established by the proof.[3]

---

I. Section 3 of the Bankruptcy Act, 11 U.S.C. § 21(a) provides in pertinent part:

(a) Acts of bankruptcy by a person shall consist of his having (1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, or made or suffered a transfer of any of his property, fraudulent under the provisions of section 107 or 110 of

this title; or (2) made or suffered a preferential transfer, as defined in subdivision a of section 96 of this title.

2. The President of Northern Indiana, Tom Logan, was also a member of Columbus Malleable's Board and he served as assistant to its chairman.

3. Although the President of Columbus Malleable stated that National Acceptance held the secured interest, and although

The President of the alleged bankrupt stated that the transaction with Northern Indiana was entered into despite the lien obligation to National Acceptance because "it was a case of getting funds to keep operating at the time."

In holding that a preferential transfer was not established, both the Referee and the District Court were apparently of the view that since the amount of the National Acceptance obligation was not proved, the petitioning creditors had failed to carry the burden of showing that the transfer operated to diminish the assets of the alleged bankrupt available to creditors of the same class (general creditors).

 It is well established by the case law that a preferential transfer within the meaning of the Bankruptcy Act does not occur unless the transfer "depletes" or "diminishes" the assets available to other creditors of the same class. National Bank of Newport, New York v. National Herkimer County Bank, 225 U. S. 178, 184, 185, 32 S.Ct. 633, 56 L.Ed. 1042 (1912); Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co., Trustee, 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268 (1913); Bertram v. Citizens National Bank, 283 F. 2d 783, 785 (6th Cir. 1960).

The necessary elements under the Bankruptcy Act to establish a preferential transfer are six in number:

(1) a transfer of property of the debtor;

he testified at length before the Referee, he was not asked by the attorneys for any of the parties nor by the Referee to disclose the remaining amount due on Columbus Malleable's obligation to National Acceptance. We are somewhat puzzled because of this omission of proof. No definite inferences can be drawn from it. It may be that neither party regarded the amount of the obligation as a relevant factor at the time of the hearing.

4. Section 60(a) (1) of the Bankruptcy Act, 11 U.S.C. § 96(a) (1) provides:

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt;

(4) made or suffered by the debtor while insolvent;

(5) within four months of the filing of a petition in bankruptcy;

(6) the receipt of which transfer by the creditor will enable him to obtain a greater percentage of his debt than other creditors of the same class.[4]

As pointed out above, the Supreme Court has construed the statute also to require a showing that the transfer results in a diminution or depletion of assets. Columbus Malleable conceded its insolvency at the outset of the hearing before the Referee, thus establishing the fourth element. It did not question the fact that a transfer of property of the debtor had been effected, nor that the transfer was within the applicable four month's period, thus establishing the first and fifth elements. We have already dealt with the second and third elements. The main thrust of its opposition to the petition was a failure to prove the sixth element, including the judicially imposed gloss of a diminution of assets. We conclude from the record that all six of the statutory prerequisites to a preferential transfer were duly demonstrated by the proof and, in addition, that it was proved that the transfer caused a diminution or deple-

(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

tion of the assets of the alleged bankrupt's estate.

 The view taken by the Referee and the District Court that the petitioning creditors were required to show the size of the obligation to National Acceptance represents, in our opinion, a misapplication of the doctrine enunciated by the Supreme Court that a preferential transfer does not occur unless there is a resulting depletion of assets. The fact remains that the alleged bankrupt was insolvent and that it repaid one general creditor's obligation in full and paid nothing to other general creditors. Our view is that a depletion of assets required for the second act of bankruptcy occurs, as the appellants contend, when there is "any distribution of assets to a creditor resulting in a proportionately larger payment than that received by the creditors of the same class."

As pointed out by the Supreme Court in Palmer Clay Products Company v. Brown, 297 U.S. 227, 229, 56 S.Ct. 450, 451, 80 L.Ed. 655 (1936):

> We may not assume that Congress intended to disregard the actual result, and to introduce the impractical rule of requiring the determination, as of the date of each payment, of the hypothetical question: What would have been the financial result if the assets had then been liquidated and the proceeds distributed among the then creditors?

The order of the District Court denying the petition to review is therefore reversed and the action is remanded to the District Court with directions to enter its order remanding the action to the Referee for entry of an order adjudging Columbus Malleable, Inc. a bankrupt and for further proceedings accordingly.[5]

5. The petitioning creditors were employees Willie Evans, Fred Vinson, George Simon and Local 2449, U. S. Steel Workers, AFL–CIO. The Referee found that the evidence was adequate to find that the three individual employees were proper petitioning creditors. In addition, the Referee found that a fourth employee, a Mr. Hardesty, was an employee-creditor and that the Referee would have been required to add him as a party had a formal motion been made to that effect. We think that the Referee was correct in finding that there were the requisite number of petitioning creditors.