**In re TENNA CORPORATION, Debtor.**

**Charles J. NEUGER, Trustee for Tenna Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. B 79–2521.**
**Adv. No. B 81–0164.**

United States Bankruptcy Court, N.D. Ohio, E.D.

March 14, 1984.

Charles J. Neuger, Cleveland, Ohio, Trustee.

Gus J. Bahas, Kenneth A. Bravo, Alan E. Schabes, Cleveland, Ohio, for trustee-plaintiff.

Robert L. Handros, Tax Div., U.S. Dept. of Justice, Washington, D.C., and Dennis Zapka, Asst. U.S. Atty., Cleveland, Ohio, for the U.S.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

The Tenna Corporation through its trustee seeks to avoid an alleged preference and recover from the United States of America the $527,264.37 payment of income tax assessments made to the Internal Revenue Service.

From the stipulations submitted by the parties and the evidence at trial, the Court finds the pertinent facts as follows:

1. On December 5, 1979, Tenna Corporation filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Upon creditor's motion, the case was converted

to a Chapter 7 proceeding on September 10, 1980.

2. On October 5, 1979, within 90 days of filing the petition, Tenna issued a check for $527,264.37 to the Internal Revenue Service in payment of income taxes and assessed deficiencies for fiscal years ending June 30th of 1969 and 1970. If these assessments were claims against the estate, the parties do not dispute the priority status accorded thereto under 11 U.S.C. § 507(a)(6).

3. Prior to the reorganization proceedings Central National Bank and Cleveland Trust, currently Ameritrust, advanced funds to the debtor under a "Credit Facility and Security Agreement" dated February 7, 1978. During the Chapter 11 proceeding, with Court authority, Tenna borrowed operating funds from the same Banks. As security for these post-petition loans, the lenders received a super-priority lien on all the debtor's property pursuant to Section 364 of the Bankruptcy Code.

4. On its behalf and as agent for Ameritrust, Central National Bank filed an "Amended Proof of Secured Administrative Claim". Evidence reflects the debtor's pre-petition debt to these lenders was satisfied during the reorganization proceedings. The balance of post-petition debt is $4,197,-289.51 consisting of $1,033,053.57 principal plus $860,865.90 interest owed Central National Bank and $1,276,674.81 with $1,026,-695.23 interest to Ameritrust. The government does not dispute the super-priority status of this debt.

5. The trustee has substantially liquidated the Tenna estate. Total assets available for distribution under the Code may possibly include bearer bonds with a face value of $235,000.00, $26,500.00 in accounts receivable apparently uncollectible and the $527,264.37 in contention which the trustee seeks to recover in this proceeding.

6. Some of the claims against the estate are entitled to priority status including approximately $26,000.00 in administrative expenses (11 U.S.C. § 507(a)(1)), in excess of $221,000.00 wage claims (§ 507(a)(3)) and $31,000.00 plus for contributions to employee benefit plans (§ 507(a)(4)). There is also in excess of $2 million priority government claims (§ 507(a)(6)), the category in which the amount in issue belongs, should a claim be filed.

### LAW, COMMENTS AND CONCLUSIONS

The government has stipulated receiving the $527,264.37 as a creditor of Tenna and that payment was a transfer of the debtor's property on account of an antecedent debt within 90 days before the filing of the Chapter 11 petition. Further, the government chose not to rebut the presumption of Tenna's insolvency (§ 547(f)). The elements of a preference under 11 U.S.C. § 547 are, therefore, conceded except for the preferential effect delineated in Subsection 547(b)(5). Consequently, the remaining issue is whether the transfer enabled the government to receive more than it would receive if

"(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title." (11 U.S.C. § 547(b)(b))

Specifically the timing of this "preferential effect" will determine if the payment in question is a preference. The government maintains this subsection requires the Court to construct a hypothetical Chapter 7 distribution on the date of petition, thereby excluding consideration of the secured debt and administrative expense the debtor incurred during the Chapter 11 proceeding.

Tenna argues that the actual anticipated distribution controls. This concept would include the super-priority lien and other administrative expense thereby rendering the payment preferential as alleged.

Section 547(b)(5) requires comparison of the Tenna payment received by the government with the distribution it would receive under Chapter 7 if the transfer had not been made. Since the time of comparison

is pivotal and the language of Section 547 is subject to interpretation, it is imperative to refer to the law and practice under the pre-Code Bankruptcy Act of 1898.

Section 547(b)(5) corresponds to Section 60(a)(1) of the prior Act which applied the "greater percentage test" to determine the preferential effect of a transfer. (11 U.S.C. ·§ 96(a)(1), repealed 1979). It was established thereunder that the actual effect of payment in light of the ensuing bankruptcy proceeding is applicable rather than a hypothetical distribution on the date of petition. *Palmer Clay Products Co. v. Brown, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936)*; and *In the Matter of Columbus Malleable, Inc., 459 F.2d 118 (6th Cir., 1972)*.

▮ Administrative expenses incurred in bankruptcy and reorganization proceedings were included in determining preferential effect. *Ely v. Greenbaum, 85 F.2d 501 (2nd Cir., 1936)* and *Barry v. Crancer, 192 F.2d 939 (8th Cir., 1951)*. While Section 547 represents a substantial modification of the former law on preference avoidance, there is nothing to suggest that Congress intended to alter the results of the *Palmer* case, supra, and its progeny. Therefore, the actual result of payment in light of the ensuing Chapter 7 proceeding applies in determining preferential effect.

Historically, the purpose and use of preference avoidance is to assure equality of distribution among creditors of the debtor's estate. Avoidance also serves to protect and prevent dismembering the estate by creditors. These concerns continue to be fundamental considerations of avoidance under the Code. *H.R. Rept. No. 95–595, 95th Cong., 1st Sess. 177–78 (1977)*. U.S. Code Cong. & Admin. News 1978, p. 5787. Changes in elements of a preference under the Code were included to insure this equality of distribution. *Id. at 178*. With this stated principle and no precedent to support the government's position, it is inconceivable and illogical to apply the hypothetical concept in determining the preferential effect of a transfer. Recovery of the payment received by the government, there-

fore, is wholly consistent with the established purpose of preferential avoidance.

The government's claim for taxes in this proceeding qualifies for priority status under Section 507(a)(6). There are other government claims entitled to like priority. All these claims, however, are subordinated to the super-priority liens and administrative debt incurred under Chapter 11. Consequently, there will be insufficient funds to benefit these claimants under the Chapter 7 distribution from this estate.

The Tenna case was filed under Chapter 11 and converted to Chapter 7. The effect of the conversion is found in 11 U.S.C. § 348. Secured debt and administrative expense incurred by the debtor-in-possession in Chapter 11 retain priority status upon conversion, subordinated only to administrative debt in the subsequent Chapter 7 proceeding. (11 U.S.C. §§ 348(d) and 726(b)). The Code, therefore, assures payment of debtor-in-possession debt.

In addition to the above, Section 547(b)(5)(C) refers to "the payment of such debt to the extent provided by the provisions of this title" thereby referencing an actual distribution scheme under Chapter 7. Distributions in Chapter 7 require payment of administrative debt. Since the Code is designed to protect the debtor-in-possession's secured and administrative debt upon conversion and in the absence of any provision to the contrary, there is no logical basis for excluding Tenna's super-priority lien and administrative debt in determining the preferential effect of the transfer.

▮ For reasons enumerated, the $527,-264.37 payment to the I.R.S. is a preference. The Tenna estate available for distribution to creditors has a maximum value of $788,764.37, an amount that is contingent and uncertain. The outstanding balance of $4,197,289.51 due the super-priority creditors and other administrative debt will consume this entire estate. Government claimants including the defendant, though entitled to equal priority, unfortunately will receive no distribution. The payment in question, therefore, clearly enabled the

government to receive more than it would receive in the distribution of this estate.

The trustee suggests the government was incorrectly paid with funds to which the Banks' security interest attached while the government insists moneys from the sale of inventory were co-mingled with other funds precluding the Banks' assertion of its security interest. This dispute is irrelevant. The only issue before the Court is an alleged preference. The government stipulated that payment was made from debtor's property thereby satisfying this element of section 547(b). The extraneous issues raised by the parties have no bearing on the transfer of $527,264.37, a preferential payment which is avoided.