## In re TENNA CORPORATION, Debtor.

## Charles J. NEUGER, Trustee, Plaintiff,

v.

## UNITED STATES of America, Defendant.

### Civ. A. No. C84–1317.

United States District Court,
N.D. Ohio, E.D.

Oct. 4, 1984.

Gus Bahas, Cleveland, Ohio, for debtor.

Dennis Zapka, Asst. U.S. Atty., Cleveland, Ohio, Robert L. Handros, Dept. of Justice, Tax Div., Washington, D.C., for defendant.

Charles J. Neuger, trustee.

### MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Pending before the Court is the defendant United States of America's ("government") appeal from the amended judgment of the Bankruptcy Court, 43 B.R. 140 (1984), which held that a payment by debtor Tenna Corporation ("Tenna") to the Internal Revenue Service ("IRS") was a voidable preference. The Bankruptcy Court found the government liable to plaintiff Charles J. Neuger, Trustee ("trustee") for $527,264.37 plus interest at the statutory rate from October 5, 1979, the date Tenna issued the check to the IRS. Upon consideration, this Court finds no error in the proceedings below and affirms the judgment of the Bankruptcy Court.

### I.

The relevant facts are as follows. Tenna was an Ohio corporation primarily engaged in the manufacture and distribution of automobile products. On October 5, 1979, Tenna issued a check, which was subsequently cashed, to the IRS for deficiencies in income tax for the fiscal years ending June 30, 1969 and June 30, 1970. On December 5, 1979, Tenna filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* While operating as debtor-in-possession under Chapter 11, Tenna borrowed operating funds from Central National Bank and Cleveland Trust; pursuant to 11 U.S.C. § 364, the banks received super-priority liens on all the debtor's property as security for the post petition loans. The super-priority status of the bank claims is not disputed.

Tenna operated as a debtor-in-possession until September 10, 1980. At that time, the proceeding was converted to a liquidation

proceeding under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* On February 6, 1981, the trustee filed an adversary proceeding in the Bankruptcy Court to recover the October 5, 1979 payment made to the IRS alleging that said payment was a voidable preference pursuant to the provisions of 11 U.S.C. § 547. At the time of the hearing on the adversary proceeding, the trustee had substantially liquidated the Tenna estate. Total assets available for distribution were approximately $235,000.00 in bearer bonds, and $26,500.00 in accounts receivable. Super-priority liens consisted of $4,197,289.51 owed to Ameritrust (formerly Cleveland Trust). In addition, other claims against the estate were approximately $26,000.00 in administrative expenses, more than $221,000.00 in wage claims, and $31,000.00 for contributions to employee benefit plans. There was also over $2,000,000.00 in government priority claims in addition to the amount claimed by the trustee to have been paid as a preference. The government claims, although entitled to priority, are subordinate to super-priority liens and administrative expenses under the Bankruptcy Code.

## II.

■ The government is not alleging in its appeal that the findings of fact by the Bankruptcy Court are erroneous and should be set aside. Rather, the thrust of the government's argument is that the Bankruptcy Court should be reversed because of its erroneous interpretation of the law. The court's conclusions of law are freely reviewable on appeal. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961).

The controversy involves the proper interpretation of 11 U.S.C. § 547, which regulates voidable preferences. That section provides in part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of the transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) *that enables such creditor to receive more than such creditor would receive if*

(A) *the case were a case under chapter 7 of this title;*

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547 (emphasis added).

With respect to the various elements of § 547 set forth above which must be established in order to void a preference, the Bankruptcy Court found, and the government does not dispute, that: a transfer was made to a creditor; on account of an antecedent debt; within ninety days prior to the filing of Tenna's petition; while Tenna was insolvent. The government argues, however, that the fifth element of § 547— whether the government received more than it would have received if the case was a case under Chapter 7—was not proved.

■ More specifically, the thrust of the government's argument is that in order to satisfy § 547(b)(5) of the Bankruptcy Code, the trustee must prove and the Bankruptcy Court must find, that the creditor received more as a result of the alleged preferential payment than it would have received under a hypothetical Chapter 7 distribution at the time the bankruptcy resulted, the date of petition filing. The government contends that the Bankruptcy

Court erred in not determining what would have occurred had Tenna originally filed a Chapter 7 petition, and was incorrect in considering post filing claims, such as the super-priority bank liens and administrative expenses, that arose after filing and during Tenna's operation as debtor-in-possession.

The Bankruptcy Court's holding, and the trustee's argument, is that actual anticipated distribution controls. The trustee argues that there is no way to satisfy the legislative intent underlying the preference provision of the Bankruptcy Code—to assure equality of distribution among creditors of the debtor's estate—without considering the actual anticipated distribution of assets.

There are no cases of which this Court is aware, interpreting § 547, which control the case before the Court. Because former sections of the Bankruptcy Act contained similar provisions regarding preferential transfer, cases under former sections of the Bankruptcy Act remain viable with respect to the interpretation of § 547(b)(5).

One such case which is cited as support for both parties' positions is *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936). The issue before the Court was whether a claimant received a preference *if at the time the payment was made*, there were sufficient funds to pay all the creditors of the same class an equal proportion of their claims, were a hypothetical distribution to take place. The Court squarely rejected the claimant's argument that the time of payment was an appropriate time frame for determining preference and in so doing stated:

> Whether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined *when the bankruptcy results.*

*Id.* at 229, 56 S.Ct. at 450 (emphasis added).

Had this been all that was said, this Court would be inclined to agree with the government's position that the date of filing is when the "bankruptcy results" and the appropriate date for determining preferential payment. However, *Palmer Clay Products* clearly does not stand for that proposition since the Court went on to state:

> ... A payment which enables the creditor "to obtain a greater percentage of his debt than any other of such creditors of the same class" is a preference.

> *We may not assume that Congress intended to disregard the actual result ...*

*Id.* (emphasis added).

This "actual result" language was later echoed by the Congress in its analysis of subsequent bankruptcy provisions regulating voidable preference:

> ... However, the preferential nature of the transfer should be tested rather by the *ultimate result,* which can be determined only by taking the transfer in conjunction with the dividend, if any, which the preferred creditor would receive out of the bankrupt estate and comparing that total with the total of like payments made to other creditors of the same class....

H.R.Rep.No. 12889, 74th Cong., 2d Sess. 188 (1936). The actual result standard is further buttressed by the legislative history pertaining to the new Bankruptcy Code. The House and Senate reports accompanying the legislation, with particular reference to § 547(b) state:

> The phrasing of the final element changes the application of the greater percentage test from that employed under current law. Under this language, the court must focus on the relative distribution between classes as well *as the amount that will be received by the members of the class of which the preferee is a member ...*

H.R.Rep.No. 595, 95th Cong., 1st Sess. 372–373, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6328; S.Rep.No. 989, 95th Cong.2d Sess. 87, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5873. This language clearly contemplates a pref-

erence determination based on a consideration of the anticipated actual distribution of estate assets. Further, there is no legislative history which even remotely suggests that *Palmer Clay Products* is no longer viable.

Although some of the preference provisions of bankruptcy legislation have changed, the underlying principles guarding the equality of distribution among creditors have remained the same.[1] In light of these principles, this Court must agree with the Bankruptcy Court's opinion that the government's position is illogical. It is impossible to determine equality of distribution among classes of creditors until an actual distribution among actual creditors can be considered.

The fact that the banks' super-priority liens arose after the date of filing makes no difference. As the Bankruptcy Court points out, other courts which have considered voidable preferences under § 547 have considered administrative expenses which also arise after the filing of the petition. *See, e.g., Ely v. Greenbaum*, 85 F.2d 501 (2d Cir.1936); *Barry v. Crancer*, 192 F.2d 939 (8th Cir.1951). These decisions are in accord with the important bankruptcy policy of equality of distribution among equal classes of creditors; certainly distribution to lower priority creditors cannot be considered until amounts of higher priority claims, like administrative expenses and super-priority liens, have been deducted from the available assets of the estate.

In the case before the Court, the Bankruptcy Court determined that the Tenna estate available for distribution to creditors

had a maximum value of $788,764.37. The Court further found that the amount due to super-priority creditors and other administrative expenses, which were of higher priority than the government, would consume the entire estate. Accordingly, the Bankruptcy Court was correct in determining that the government received more than it would have received under a Chapter 7 distribution and in holding that payment to the IRS was a voidable preference.

### III.

Additionally, the government argues that the Bankruptcy Court's award of interest was error because there is no provision of law for interest on a preference in bankruptcy. This Court does not agree. While § 547 is silent on the subject of interest, it does not preclude the Bankruptcy Court from exercising its equitable power to award interest in appropriate circumstances. *See* 4 *Collier on Bankruptcy*, ¶ 550.-02, 550–6 (15th ed. 1984) and cases cited therein. The lower court's order providing for interest at the statutory rate is also affirmed.

### IV.

Accordingly, the Bankruptcy Court's decision is affirmed in all respects.

IT IS SO ORDERED.

---

**1.** "Equality of distribution is the key note of every law dealing with distribution of estates of insolvent debtors. Thus fraudulent and preferential transfers constitute an important section in the administration of bankruptcy laws." H.R.Rep.No. 12889, 74th Cong., 2d Sess. 187

(1936); "... the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." H.R. Rep.No. 595, 95th Cong., 1st Sess. 177–78 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6138.