## In re MACKLIN.

## FARMERS' & MERCHANTS' BANK OF BRYANT, IND., v. BRIGGS.

(Circuit Court of Appeals, Seventh Circuit. December 8, 1924. Rehearing Denied February 10, 1925.)

### No. 3413.

**Bankruptcy ⬅303(3)—Mortgage held not a voidable preference.**

Evidence considered, and *held* insufficient to show that when bankrupt gave a mortgage to a bank, within four months prior to his bankruptcy, to secure a past indebtedness and a further loan, the bank had reason to believe that he was insolvent so as to render its mortgage voidable as a preference.

Appeal from the District Court of the United States for the District of Indiana.

In the matter of Jacob I. Macklin, bankrupt. The Farmers' & Merchants' Bank of Bryant, Ind., appeals from an order of the District Court setting aside a mortgage as preferential. Reversed, with directions.

The appeal is from an order setting aside as preferential a mortgage by bankrupt to appellant. Macklin, the bankrupt, owned and operated an unincumbered 225-acre stock farm near Bryant, Ind., where appellant had long conducted a state bank capitalized at $25,000. For many years Macklin was also in the live stock business, doing his banking mainly with appellant; his annual deposits running from $100,000 to $150,000. He was long a borrower from the bank, and his indebtedness to it on October 28, 1921, was about $11,500 on notes and about $800 on an overdraft. The bank examiner had remonstrated against so much of the bank's assets being tied up in one loan, which was contrary to the general practice of the Indiana banking department that no unsecured loan should be permitted to exceed 20 per cent. of the bank's capital. After conference with Macklin and the bank's officers, he gave it on said date a mortgage for $15,820.66 on this farm, which amount covered, not only his existing indebtedness to the bank, but a further loan of $3,500 which the bank was to (and thereupon did) advance to pay one McKenzie, to whom Macklin owed that amount for the balance of purchase money of another farm of 80 acres. The mortgage notes were additionally signed by Macklin's wife. The 80-acre farm had been recently bought by Macklin, who gave in part payment a mortgage of $6,000 upon it and 10 acres more which he owned.

It was understood that Macklin had arranged a loan of $14,000 upon the large farm, out of which, when this loan was consummated, he would pay the bank all but $5,000 of its debt, which $5,000 the bank would thenceforth carry without security, whereupon its mortgage would be released; the remaining avails of the $14,000 loan to be applied in the discharge of other debts of Macklin. The then pending application for the $14,000 fell through. Afterwards another loan was arranged, but the bank then declined to release its mortgage, claiming that Macklin's other debts were much larger than he had represented, and the loan was not made.

Shortly before expiration of four months following the giving of the mortgage to the bank, creditors of Macklin filed petition in bankruptcy. The bank intervened, denying Macklin's alleged insolvency, and contending that his occupation was mainly that of tilling the soil, and therefore he was not subject to involuntary bankruptcy. The master, to whom these issues were referred, found that his principal occupation was not tilling the soil, but was buying and selling live stock, and that at the time of filing of the petition Macklin's debts were $46,500, and the aggregate value of his assets was $45,400. He was accordingly adjudicated a bankrupt.

The trustee in bankruptcy then petitioned for sale of the 225-acre farm free from the bank's mortgage, which was alleged to be preferential and void. The bank answered, alleging that at the time the mortgage was given it did not have reasonable cause to believe that thereby a preference in its favor would be effected. This issue was heard by the referee, who held the mortgage void as constituting unlawful preference to the bank, and ordered it set aside. Upon the bank's petition for review the District Court confirmed the master's decision and order.

Moses B. Lairy, of Indianapolis, Ind., for appellant.

James J. Moran, of Portland, Ind., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). Did the bank have reasonable cause to believe that its taking of the mortgage would effect a preference in its favor? All the evidence and the findings of fact seem to us to require a negative answer. The only evidence of the extent of the bankrupt's assets and liabilities was afforded by the report of the master on the issue of insolvency; the assets showing $45,400, and the debts $46,500, a difference of but $1,100. The evidence conclusively shows that some of Macklin's debts were not disclosed to the bank at or before the mortgage was given. Allowing the trustee the benefit of all disputed items, there is nothing in the record to indicate that the bank had any reason to believe the entire debts of Macklin at that time exceeded $32,500—a margin of nearly $13,000 upon the side of his solvency. The bank officers testified they had reason to believe that the difference was $20,000. One finding of the referee is:

"It is fair to state, in discussing the findings, that when Mr. Schwartz, one of the bank's directors, at the time the mortgage was taken, made memorandum of the amounts of the debts, that he did not have and was not informed by the bankrupt of all the debts which he owed."

While the finding does not state the amount of the debts thus unknown to the bank, it was evidently believed by the referee sufficiently to be worthy of mention, and, if at all substantial, the assets would have been materially larger than the believed liabilities. True it is, the bank knew he had not the ready means for quickly discharging his debts. But it goes without saying that this alone does not show insolvency, or knowledge of it. He was a good customer of this small bank, and it is but natural that, so long as they believed him solvent and able ultimately to meet his obligations, they would not force him to the wall. The desire to be secured showed only ordinary business prudence, but apart from this the banking department was pressing them to have the claim reduced or secured, and Macklin had this large farm unincumbered, whereby he could furnish the security. The bank evidently did not wish to make a long-time loan of so large a part of its capital, and encouraged him to make a loan elsewhere. It knew that McKenzie was threatening proceedings to collect the $3,500 which Macklin owed him for the balance of the purchase money of another farm, and the bank showed its further faith by advancing the funds to pay off McKenzie. It is true the mortgage was given for the whole debt, and Macklin's wife signed the notes; but it does not appear she had any property, and, even if she had, the giving of the mortgage for the whole debt and her signing the notes may well be regarded as added incentive for Macklin to carry out the arrangement for a permanent loan, and the payment of the bank's indebtedness down to $5,000, for which they would extend credit to him without security.

It is insisted for the trustee that this issue was decided adversely to and conclusively upon the bank in the earlier controversy, wherein the bank was a party by its intervention. But that proceeding involved only the issue of insolvency and the occupation of the alleged bankrupt. The mortgage was not in controversy, and there then was no semblance of an issue as to the bank's reason to believe that Macklin was insolvent at the time it took the mortgage. This became an issue only when the trustee asked that the mortgage be set aside as preferential. Upon the record we cannot escape the conclusion that the bank had no reasonable ground to believe it was being preferred in the giving of the mortgage.

The order of the District Court is reversed, with direction to dismiss the petition, in so far as it asks to have the mortgage set aside.