## In re EVANSVILLE BROOM CO.

## BOGGS BROOM CORN CO. v. SABERTON.

Circuit Court of Appeals, Seventh Circuit.
November 26, 1928.

Rehearing Denied December 31, 1928.

No. 3958.

Clarence Silber, Frederick D. Silber, and Martin J. Isaacs, all of Chicago, Ill., and Isidor Kahn, of Evansville, Ind., for appellant.

Richard Waller, James F. Ensle, and Phelps F. Darby, all of Evansville, Ind., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. The Evansville Broom Company, a concern manufacturing brooms, was adjudged a bankrupt on a petition filed June 23, 1925. It was insolvent on December 1, 1924, and was continuously insolvent thereafter, which appellant at all times well knew.

On December 1, 1924, bankrupt owed the appellant, a dealer in raw materials used in the manufacture of brooms, $50,828.50, and was hard pressed for materials for use in its factory and for cash to meet its pay roll. On that date the bankrupt wrote the appellant the following letter:

"If we will assign to your company good collectible accounts receivable sufficient to protect you against loss, will your company be willing to sell us such merchandise as may be required in our business and advance to us such amounts of cash as may be necessary to meet current bills accruing hereafter, as well as our payroll hereafter accruing?"

On December 2, appellant replied as follows:

"We acknowledge receipt of your letter of December 1, 1924, in which you propose to assign to us good collectible accounts receivable sufficient in amount to protect us against loss, if we sell you such merchandise as may be required by you in your business, and advance to you from time to time such amounts as may be required to pay current bills accruing hereafter and payrolls hereafter accruing, and you are advised that we have considered this proposition and are willing to do this on the basis indicated.

"At the time of placing orders with us, please forward to us good collectible accounts receivable sufficient to cover the amount of the order, and, at the time of requesting advancements to cover current bills and payroll, likewise send us good collectible accounts receivable to cover."

Soon thereafter appellant began furnishing materials and cash to bankrupt, and from time to time took assignments of accounts receivable until April 17, 1925, when these transactions ceased. From December 2, 1924, to February 23, 1925, the beginning of the four-months period, the cash and merchandise furnished amounted to $2,893.83 in

excess of accounts assigned, increasing the debt to the appellant to $53,722.33. In the same manner the debt increased by the end of February to $54,343.24, and by the end of March to $55,899.02.

Between April 1 and 15 the cash and merchandise furnished amounted to $446.25 and the accounts assigned to $636.41, the difference, $190.16, reducing the debt to $55,708.-86. Shortly after the letters of December 1 and 2 the appellant demanded other and additional security, and on January 20, 1925, wrote a letter to the bankrupt in which it said:

"Advise if you could arrange to give us the brooms that are made up for collateral to cover future shipments of materials and cash. About the only way this could be handled would be for you to put the brooms in a warehouse, and we would have to arrange with the warehouse company to release them on order, and you, in turn, could send us the assigned accounts to cover the shipments."

Although the bankrupt had ample storage facilities of its own for the storage of brooms, from March 4, 1925, on, all the brooms it manufactured were day by day stored by the bankrupt in a warehouse in Evansville pursuant to this request. A negotiable warehouse receipt was issued against them, this receipt being taken in the name of appellant and indorsed by it to the general manager of the bankrupt. The brooms were insured against loss by fire in the name of appellant upon its request, and the premiums on the policies were paid by it. None of these brooms were taken out of the warehouse until they were sold in April.

On April 15, 1925, a large order of the stored brooms was sold to the Parsons & Scoville Company at a discount much larger than the discount allowed on other sales about that time. The account arising from this sale, amounting to $6,261.31, was on that day assigned by the bankrupt to appellant, and payment of the account was made on April 22 by a check to the bankrupt, which was indorsed by it and mailed to appellant.

No delivery of merchandise or advancement of cash was made by the appellant on April 15, and none had been made between April 5 and 15. From April 1 to 5 there was one delivery of merchandise and one advancement of cash, and the amount of the Parsons & Scoville account was about three times the total amount of all cash and merchandise furnished at different times during the 30 days before the assignment.

The effect of the Parsons & Scoville transaction was to reduce the debt of the bankrupt to appellant to $49,447.55. Another assignment on the same date of $226.93 was followed by one advancement of cash and one delivery of merchandise, which brought the debt to $49,607.08. Of the accounts assigned between February 24 and April 17, $780.72 remained uncollected. Still the appellant realized from the assignments within the four-months period $3,334.53 in excess of the amount of merchandise delivered and cash advanced during that time.

Appellant filed a general claim for $49,-128.91. The referee found that appellant had realized from accounts assigned to it during the four-months period $7,912.67. From this he deducted the sum of $387.60, the amounts received by appellant in four instances in which the assignments were made substantially at the time the orders for merchandise and the requests for cash were made. The balance remaining, $7,525.07, he held to be a voidable preference, and ordered appellant's general claim to be disallowed, unless or until it paid to the trustee this sum of $7,525.07.

On petition to review, the court approved the referee's order. Appellant insists that the order was wrong, and that, to use the language of its brief:

"The agreement of the parties made more than four months before bankruptcy, and their conduct thereunder, evidence an intention to create an equitable assignment of and lien upon the bankrupt's accounts receivable subsequently created. Hence, the pledge of such receivables within the four-months period must be related back to the date of the agreement pursuant to which they were assigned."

The only evidence of an agreement is found in the two letters above set forth, appellant claiming that they show a proposition and an acceptance of it; while appellee's position is that the letter of December 2 was a counter proposition which was never accepted or acted upon. The words "on the basis indicated," at the end of the first paragraph of appellant's letter, do not appear to refer to what preceded them, because all that went before them was a recital of the bankrupt's proposition, followed by the statement that appellant was "willing to do this." Hence it is argued that the words "on the basis indicated," if they have any force, refer to the plan indicated in the paragraph which follows. In that case the agreement was that the pledges were to be made as indicated in the last paragraph—that is, as orders for materials and cash might be given.

■ Whether assignments made as was here proposed and agreed upon, but within four months of the filing of a petition in bank-

ruptcy, would be treated as preferences need not be considered, for the record shows plainly that the terms of this agreement were not followed, but were materially departed from in every instance, except possibly the four above mentioned, as to which the referee's ruling is not questioned by either party. Assignments of accounts were not made even substantially "at the time of placing orders," or "at the time of requesting advancements." Indeed, the indebtedness for cash and merchandise advanced during 1925 at times exceeded the accounts assigned by more than $4,000, and at the beginning of the four-months period this excess totaled $2,893.83. Had the agreement been adhered to, there would not at that time have been this increased indebtedness, since neither cash nor merchandise would have been supplied in advance of the assignment of accounts to cover them.

To the amount of credit extended without requiring the stipulated security the appellant became an unsecured creditor, and whatever was received during the four months and applied upon the unsecured debt that had been incurred prior to such payment was preferential, and properly required to be restored before allowance of the general claim.

Part, however, of the avails of the accounts assigned within the four-months period was applied in payment of indebtedness incurred in the many transactions subsequent to February 23, the date on which the four-months period began, and as to this part further discussion is necessary. On February 24 the appellant sent to the bankrupt merchandise to the amount of $341.60, without having received the security contemplated by the correspondence of December, 1924. A request for $380.30 cash, which was advanced on February 28, was accompanied by an assignment of accounts in the amount of $100.-99, and as to this last amount the referee held the assignment contemporaneous with the advancement and allowed the appellant to retain the proceeds of that assignment.

On March 2 the first preferential assignment of accounts was made. It was followed during March by frequent items of debit and credit, the total of advanced merchandise and cash for that month being $3,023.53, and the total of accounts assigned $1,467.75. Similarly there was a series of transactions on both sides until the 15th of April, on which date there appears as one item a debit of assigned accounts of $6,261.31, representing the assignment on that day of the account arising from the sale to Parsons & Scoville Company of a large quantity of brooms which had been stored in a public warehouse by the bankrupt following the receipt of the letter of January 20, 1925, set out in part above.

It appears that, following the December correspondence between appellant and the bankrupt, the market for brooms was not good, and the bankrupt having failed to comply with its undertaking to make assignment of accounts as merchandise and cash were requested, the appellant sought to have the bankrupt furnish security by warehousing the brooms, as manufactured, subject to appellant's order until they could be sold. Beginning early in March, all the brooms made were day by day so deposited by the bankrupt, and none were removed until the sale in April from which arose the large account assigned on April 15.

If this account represented assets then for the first time turned over to the appellant, the transaction might well be considered preferential as of that date. But it represents the avails of transfers from day to day of the manufactured goods to secure the advances by the appellant, and these transfers, as well as the assignments of accounts made similarly, must, as preferential payments, be reduced by the amounts of merchandise and cash which the appellant was supplying during that period. Such treatment is, in our judgment, required by section 60c of the Bankruptcy Act (11 USCA § 96), which reads:

"If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

Wholly apart from the contract, there appears here a running account, i. e., a series of mutual debits and credits—the receiving of brooms and accounts upon one side, and the supplying of cash and merchandise on the other—and inasmuch as the transfer of brooms or accounts was in each case preferential, and followed by good faith extension of further credit, there is here a situation calling for the application of section 60c.

The amount found by the District Court to be preferential and ordered restored as a condition to the allowance of the appellant's general claim was $7,525.07, which was what the appellant realized from the accounts assigned during the four-months period, excluding therefrom the four contemporaneous transactions held by the referee not to be preferential. Against the amount so found

returnable there should be set off the amount of cash and merchandise supplied by the appellant subsequent to March 2, the date of the first preferential payment during the four-months period, excluding from this set-off, however, the amount of $286.61 for the three advances subsequent to March 2, already allowed the appellant by the referee as having been made in response to requests accompanied by assignments. Computing from the record this set-off is found to be $3,-569.63. Deducting this sum from $7,525.07, there is left the sum of $3,955.44, which must be restored as a condition to proving up the unsecured claim, which, if allowed, shall be increased by the amount refunded hereunder.

The order is reversed, with direction to modify in accordance with the foregoing.