## BAIN v. INDIANA NAT. BANK.
### No. 4883.

Circuit Court of Appeals, Seventh Circuit.
April 5, 1933.

Charles E. Henderson, Laurens L. Henderson, and Frank King, all of Indianapolis, Ind., for appellant.

William W. Hammond, C. Severin Busch-mann, and Leo M. Gardner, all of Indian-apolis, Ind., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The trustee seeks reversal of a judgment for appellee in an action instituted by him to recover from the bank money and the value of collateral security received by the bank within four months of the bankruptcy in alleged contravention of the Bankruptcy Law (11 USCA).

For ten years preceding the bankruptcy, bankrupt was engaged in the wholesale plumbing and heating business, and did its banking with appellee. It had a line of credit of about $60,000, and during the period its indebtedness to the bank was usually between $40,000 and $50,000. On several occasions the debt was extinguished, but within a short time it would again mount. Bankrupt's deposits varied greatly. Often about the 10th of each month a large deposit was made, but it was customarily quite rapidly reduced, although there was rarely, if ever, an overdraft.

On July 21, 1930, the debt was $45,000, represented by customary ninety-day notes—$15,000 due August 4, $5,000 August 7, $15,-000 October 21, and $10,000 October 20. The first two notes falling due, the bank gave the usual notice, but it seems the managing officers (who had guaranteed the indebtedness to the bank) were then out of the city. On August 12 bankrupt's balance on deposit was $1,804.65, and on that day it made a deposit of $18,167.65. On the same day bankrupt gave the bank its check for $15,000 to pay the note due August 4, and one for $2,000 to apply on the $5,000 note due August 7; and at the same time gave the bank collateral, consisting of bills receivable, supposed to be worth about $3,000, to secure the payment of a note for $3,000 given that day for the balance due on the matured $5,000 note.

On August 14, one of the bankrupt's creditors, with a claim of about $200, began suit thereon in an Indiana state court, and upon affidavits then filed secured the appointment of a receiver for bankrupt's property. Thereupon bankrupt filed, on August 15, its voluntary petition in bankruptcy.

The trustee contends that the payment of the notes and the giving of the security were preferential transfers within section 60b of the Bankruptcy Act, 11 USCA § 96 (b), in that the bankrupt was then insolvent and that the bank had reasonable cause to believe that a preference would result; and that the transfer contravenes section 67e of the Bankruptcy Act, 11 USCA § 107 (e), in that it was made by the bankrupt with the intent of hindering, delaying, and defrauding creditors of the bankrupt other than the bank.

Substantially all of the facts were stipulated. It appears, inter alia, "That said payments were by checks of the Jackson Supply Company drawn on the Indiana National Bank against deposits which had been made by the Jackson Supply Company and received by the Indiana National Bank in the regular course of business prior to the issuance of said checks, and said deposits were made and received without collusion or procuration upon the part of the Indiana National Bank or the Jackson Supply Company." "That at the time of the payment of said notes, there was no discussion with reference to the condition of the company and the substance of the conversation was to the effect that the Indiana National Bank did not like to have notes past due and not renewed promptly. That at the time of the payments aforesaid, it was the intention of the officers of the Jackson Supply Company to re-borrow said amount within a few days." "That after said payment to the bank on August 12, as aforesaid, the company made a further deposit at the Indiana National Bank on August 13th. That it continued to solicit and fill orders." That its annual statement of January 15, 1930, which was given the bank, showed a very substantial surplus of corporate assets over liabilities. That, after receiving the financial statement of the company as of January 15, 1930, there was no discussion between the bank and the officers of the company as to the financial condition of the company, and the bank made no inquiries from other sources as to the solvency or insolvency of the company.

The trial was by the court, which made findings of fact substantially following the stipulation, and awarded judgment for the bank.

While the trustee does not contend that, at the time of receiving the payments and collateral, the bank had any knowledge of the bankrupt's then conceded insolvency, he does contend that under the facts the bank, in the exercise of reasonable diligence, was put upon inquiry as to bankrupt's financial condition, and that such inquiry would have re-

vealed the insolvency, and that hence under section 60b the trustee should have recovered the payments and value of the collateral as an unlawful preference to the bank.

We are of opinion that under the facts, mainly those stipulated, the bank was entirely justified in receiving, and after bankruptcy was entitled to retain, the payments thus made and the collateral given. We do not think that any of the facts appearing required the bank to be suspicious of the company's solvency. The stipulation is that the payments were received in the regular course of business. That of itself means much. Such deposits and payments, in the course of their long business dealings, were not infrequent or unusual. It does not appear that the bank had ever before been put on inquiry as to the solvency of this customer, and we cannot see, under this record, why the suspicions should have begun with these transactions. There is nothing to indicate that the bank could have known, or reasonably have suspected, that bankruptcy would follow within four months or at any time.

And so as to the issue which the trustee raises under the assertion of the bank's liability under section 67e. We cannot find from the record the evidence which would sustain the assertion that the payments made to the bank were with the intent on the part of bankrupt of hindering, delaying, or defrauding its other creditors. It is definitely established that the bankrupt was expecting to continue carrying on the business—that after these payments it did sell merchandise, and, as usual, made further deposit in the bank, and expected to reborrow much, if not all, of the money it had paid the bank. If this transaction were sui generis, it might raise suspicion as to bankrupt's good faith; but it was in line with the regular course of business extending over the years. At a certain time of the month large deposits would be made and payments made to the bank, and, when a little later the money was again required, it was reborrowed, and this was the usual course of business. We find nothing in the evidence which would have required the court as a matter of law to find that by this transaction the bankrupt intended to make a payment and conveyance whereby its creditors would be hindered or delayed or defrauded.

The burden was upon the trustee to establish a state of facts which would justify recovery. Under the findings of the court, and with the presumption in favor of its judgment, we cannot say that the record discloses no substantial evidence to sustain that judgment. What we said in Re Macklin, 4 F.(2d) 227, is quite applicable here.

But, apart from any question of preferential payment under these sections, the payment of the $17,000 is sustained under appellee's banker's lien or right of set-off.

When on August 12 there was on deposit in the bank about $20,000, the bank had a banker's lien thereon and the right to set-off against the lien its debt against bankrupt. Continental & Commercial Trust & Savings Bank v. Chicago T. & T. Co., 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268; New York County Nat. Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380; In re Cross (C. C. A.) 273 F. 39. The bank's application, after the bankruptcy, upon its debt due from bankrupt of a balance of $533.89 then on deposit, is conceded to have been proper, and the trustee seeks no recovery of this amount.

When, therefore, the bank received checks of $17,000 to apply upon the then indebtedness of the bankrupt, it received only what it had the lawful right to take; and in so receiving it the bank did not obtain a preference, and its payment by the bankrupt was not fraudulent as to other creditors. The right of a bank, under such circumstances, to be protected in receiving and holding payment of funds which it could lawfully have held under its right of lien or set-off, is declared by the Supreme Court in Studley v. Boylston Bank, 229 U. S. 523, 33 S. Ct. 806, 808, 57 L. Ed. 1313, where it was said: "If this set-off of mutual debts has been lawfully made by the parties before the petition is filed, there is no necessity of the Trustee doing so. If it has not been done by the parties, then, under command of the statute, it must be done by the Trustee. But there is nothing in § 68a[1] which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted."

The judgment is affirmed.

---

[1] 11 USCA § 108 (a).