**WERTZ v. NATIONAL CITY BANK OF EVANSVILLE, IND.**

**In re McFERSON & FOSTER CO.**

**No. 7016.**

Circuit Court of Appeals, Seventh Circuit.

May 9, 1940.

Floyd C. Williams and John H. Druffel, Jr., both of Cincinnati, Ohio, for appellant.

Isidor Kahn, Edmund F. Ortmeyer, and Daniel H. Ortmeyer, all of Evansville, Ind., for appellee.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This is an action at law which seeks to avoid preferential payments made by the debtor to the defendant bank. The complaint contains sixty-four paragraphs, and is brought under section 60, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b. An answer of nine paragraphs was filed. The first was a general denial, the others pleaded setoff, and the eighth paragraph was based upon the case, being a running account of mutual debts or credits between the bankrupt and the defendant. A jury was waived and the court made special findings of fact and rendered its conclusions of law thereon.

The facts are substantially as follows: On March 21, 1936, the McFerson and Foster Company, an Indiana corporation, was adjudicated a bankrupt upon an involuntary petition. On May 6, 1936, a trustee was appointed and authorized to in-

stitute this action. The defendant is a national bank located in Evansville, Indiana.

When the bankruptcy proceedings were instituted, the assets of the debtor were not and since that time they have not been sufficient to pay the claims which have been filed and allowed, the deficiency with respect thereto being in excess of $50,000. Prior to the commencement of this action, appellant made written demand for payment of the various sums alleged in the complaint which demands were refused.

A receiver had been appointed for the debtor by a state court on February 18, 1936. Prior to this time appellee had no reasonable cause to believe that the debtor was insolvent. Up to December 25, 1935, the debtor had made all payments on merchandise accounts regularly and promptly when they became due and payable.

During the period covered by the complaint the debtor maintained a checking account with appellee and made daily deposits therein, in the ordinary and usual course of its business, and those deposits were received by appellee in the ordinary and usual course of business. Each alleged preferential payment was one of such deposits; each was subject to withdrawal by the debtor's check; and there were no limitations or restrictions on its right to issue checks on that account. In the ordinary and usual course the debtor issued checks against that account and the defendant paid them. Each deposit and each withdrawal was a part of a running account between the debtor and appellee, a series of mutual debts and credits. The account at times showed credit balances in favor of the debtor, but at most times showed overdrafts. At times during the period in controversy the debtor assigned accounts receivable to the appellee, but they were not effective as security because the debtor retained exclusive control of them. During this time the debtor deposited in this account a total of $115,638.66, and there was withdrawn by its checks a total of $111,954.64. During this period there was deposited $3,684.02 more than was withdrawn, of which sum $379.66 was a credit in favor of the debtor at the close of business on February 8, 1936, which was the date of the last alleged preferential payment. This sum was paid to the debtor.

At the beginning of business on October 29, 1935, which was the beginning of the four months' period prior to filing the petition in bankruptcy, the debtor was indebted to the defendant, by reason of an overdraft in the checking account, in the amount of $3,304.36.

Each withdrawal from the checking account after the appellee had been preferred, if there was a preference, was a giving by appellee of further credit in good faith without security of any kind for property which then became a part of the estate of the debtor, and the amount of such new credits remaining unpaid at the time of the adjudication in bankruptcy, when set off against the amounts which would otherwise be recoverable from the appellee, if there was a preference, equals the amount of the alleged preferences, except as to the amount of $3,304.36.

Here the District Court, citing In re Evansville Broom Co., 7 Cir., 29 F.2d 643, concluded that appellee was entitled to such setoff, if there was a preference, under paragraph eight of its answer, pursuant to the provisions of section 60, sub. c of the Bankruptcy Act.

None of the deposits made by the debtor, including the alleged preferential payments, depleted its assets except to the amount of $3,304.36. None of the deposits, including the alleged preferential payments, was made by the debtor or received by appellee for the purpose of building up the deposits for the benefit of the appellee or to enable it to exercise its right of setoff, or with a view to such use, and the alleged preferential payments, except the amount of $379.66, were applied by the appellee under its right of setoff to the payment of the overdraft in the amount of $3,304.36 existing at the beginning of business on October 29, 1935.

Here, the court, citing Bain v. Indiana National Bank, 7 Cir., 64 F.2d 112, concluded that the defendant was entitled to such setoff, if there was a preference, under paragraph 9 of its answer, pursuant to the provisions of 68, subs. a and b, of the Bankruptcy Act, 11 U.S.C.A. § 108, subs. a, b. The court further found that none of the alleged preferential payments was in fact a preferential payment, or a payment of any kind, but that each was a deposit in the checking account, and that none of such deposits created a preference in favor of appellee against the other creditors of the bankrupt, and that the appellee did not believe or know, or have reasonable cause to believe or know, that any of such deposits were intended as a preference in its favor.

Upon these findings the court concluded that plaintiff was not entitled to recover in this action, and thereupon dismissed the action at the cost of the plaintiff.

■ We are first met with appellee's contention that appellant is bound by the court's findings because appellant failed to comply with Rule 75 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, relating to the record on appeal, in the following respects:

(1) The appeal was·taken on April 17, 1939, and appellant failed to serve upon appellee, promptly after the appeal was taken, a designation of the portions of the proceedings in evidence to be contained in the record on appeal. A designation was served upon appellee on July 6, 1939.

(2) Appellant failed to give appellee ten days thereafter within which to serve and file a designation of additional portions of the proceedings and evidence to be included in the record on appeal. The certificate of the transcript was dated July 7, and was filed in this court Monday, July 10, 1939.

(3) The trial was stenographically reported and appellant did not file with his designation two copies of the reporter's transcript, and did not give appellee the opportunity to designate and file the parts which appellee desired to have added.

(4) Appellant failed to serve upon appellee, by original or copy, a condensed statement in narrative form of the testimony to be contained in the record, and failed to give appellee opportunity to require testimony in question and answer form to be substituted therefor.

(5) Appellant introduced in evidence the bank ledger sheets showing the checking account of the bankrupt for a four months' period preceding the filing of the involuntary petition. Appellant's designation required the inclusion of that exhibit in the record on appeal, but appellant failed to furnish a copy thereof or procure an order of court that the original be included. Hence appellee says ·that the exhibit is not in the transcript of record by original or copy, which makes it impossible for this court to determine whether the evidence sustains the findings of fact.

The record was filed in this court on August 18, 1939. Appellant's brief was filed September 8, and appellee's brief was filed on September 13, 1939. It not only raises the question which we have just mentioned, but it fully argues the questions presented on the merits. It must be conceded that appellant in many respects did not follow Rule 75 of the Federal Rules of Civil Procedure, and we must not be considered as condoning that failure. However, if appellee had promptly called our attention to these failures they would have been corrected immediately. It did not choose to do this but presented its objections in this respect, together with its brief on the merits. The pressure of our work does not permit us to examine the parties' briefs on the merits so far ahead of the day of hearing. Our attention was not called to these errors until shortly before the day of hearing on the merits. All of .these errors of procedure, save one, presently referred to, could and would have been corrected had we known of them. After all, an appellee is never compelled to add to the record. He may do so if he so desires. However, nothing on this appeal ever indicated to us that he so desired. Indeed, this was quite immaterial to appellee because if the record did not contain all the evidence, there would be little chance of our correcting the findings in case they were not supported by substantial evidence. Appellee, in argument before us, urged that certain exhibits were not in the record here. The printed record substantiates this contention, and the clerk of the District Court so certified on July 7, 1939. His reason for not including them in the record was that appellant had not secured an order of court directing their certification, as provided by Rule 75(i). Subsequently, however, on February 16, 1940, they were so ·certified by the clerk of the District Court, and filed with the clerk of our court on February 17, 1940, and of course they were here when the appeal was heard. Appellee's contentions in this respect cannot be sustained.

Appellant contends that the bankrupt was insolvent throughout the four months immediately preceding the filing of the petition; that while insolvent, appellant transferred money to the defendant bank, a creditor; that the bank knew, or had reasonable grounds to believe, that the bankrupt was insolvent at the times the bank received the money from it; and the effect of such transfers was to give the bank a greater percentage of its debt than other creditors of the same class.

There is no dispute as to the dates of the several deposits, and it is not denied now nor specifically admitted, that the debtor was then insolvent. However, appellee contends, and the District Court so found, that the bank had no knowledge of that insolvency during the period in which the deposits were made, and that it did not have reasonable ground to believe that that was true. It is true that these facts were controverted by oral testimony, and different triers might have found differently upon consideration of all the evidence. However, the presiding judge considered all the evidence and heard the witnesses testify, and we are not at liberty to strike down his conclusions of fact when, as we think, they are supported by substantial evidence. This action was treated by both parties and by the court as one at law, in which the rule is particularly applicable. While the case presents some equitable features, even in equity cases, the findings of the District Court on questions of fact will not be disturbed unless in our opinion such findings are clearly wrong. Proper weight to the findings on disputed issues of fact should always be accorded to the tribunal which heard the witnesses. Keller v. Potomac Co., 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731; Hoeltke v. Kemp Co., 4 Cir., 80 F.2d 912; Rule 52, Rules of Federal Procedure.

Appellant insists that the deposits made in the bank were preferential payments to the bank. However, the court found that they were not preferential payments under sections 60, subs. a and b, of the Bankruptcy Act. Under the findings which we have heretofore set forth, the court clearly described the character of these deposits, and we think the finding is sound and fully established by substantial evidence. If they should be considered as preferential payments, then we think appellee would be entitled to set off against them an amount equal to their total, except the item of $3,304.36.

Section 60, sub. c, of the Bankruptcy Act provides that if a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication may be set off against the amount which would otherwise be recoverable. Appellant contends that section 60, sub. c, is not applicable to this situation. We feel constrained to hold that it is under the following rulings: Kaufman v. Tredway, 195 U.S. 271, 25 S.Ct. 33, 49 L.Ed. 190; Walker v. Wilkinson, 5 Cir., 296 F. 850; and In re Evansville Broom Co., 7 Cir., 29 F.2d 643.

Furthermore, appellee urges that in view of section 68, subs. a and b of the Bankruptcy Act, 11 U.S.C.A. § 108, subs. a and b, it is entitled to set off against the alleged preferential payments an amount equal to the total, including the item of $3,304.36, which was the amount of the overdraft at the beginning of business on October 29, 1935. Section 68, sub. a, of that Act provides that in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other and the balance only shall be allowed or paid. Section 68, sub. b, before the amendment of 1938, provided that a setoff should not be allowed which was transferred within the period of four months with a view to such use and with knowledge or notice that the bankrupt was insolvent or had committed an act of bankruptcy.

The facts as found by the District Court we think are squarely within section 68 sub. a, and that conclusion is supported by section 68, sub. b. The facts are supported by substantial evidence, and we think the conclusion is sound. Continental & Commercial Trust Co. v. Chicago Title & Trust Co., 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268; Bain v. Indiana National Bank, 7 Cir., 64 F.2d 112. Appellant in opposition to this ruling, relies upon Bank of Commerce v. Hatcher, 4 Cir., 50 F.2d 719, 85 A.L.R. 359, and analogous cases. We think these cases are not in conflict with the legal principles set forth in the cases which we have cited. The facts, however, are quite different, and this accounts for the different conclusions.

Judgment affirmed.